*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-11-00643-CR

Henry D. **McKINNON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 12, Bexar County, Texas
Trial Court No. 320730
Honorable Scott Roberts, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:  March 28, 2012

AFFIRMED

After the trial court denied his motion to suppress evidence, appellant Henry D. McKinnon entered a plea of *nolo contendere* to the offense of driving while intoxicated. McKinnon now challenges the trial court's ruling on the motion to suppress. We affirm the trial court's judgment.

**BACKGROUND**

At approximately 5:30 a.m., San Antonio Police Officer Thomas Smith received a police dispatch informing him that a concerned motorist was following a vehicle being driven erratically about five miles from Smith's location. While Smith drove to intercept the vehicle, the dispatcher relayed the concerned motorist's observations in real-time to Officer Smith. The motorist reported street locations and specific details about the vehicle's movements—weaving in and out of traffic, driving on the shoulder, and almost causing a collision with at least one other vehicle. When Officer Smith's car approached the two vehicles, they were stopped at a traffic light. Upon seeing the patrol car, the concerned motorist waved to Officer Smith and pointed at McKinnon's vehicle. Officer Smith pulled up to the concerned motorist's car at a distance that Smith testified was "face-to-face." The motorist exclaimed to Smith, "That's the guy," and pointed at McKinnon. Smith maneuvered between McKinnon's vehicle and the concerned motorist's vehicle and activated the police cruiser's overhead lights. McKinnon pulled into a nearby gas station. The concerned motorist drove away without giving his name to the 911-dispatcher or to Officer Smith.

Smith approached McKinnon and immediately observed he had glassy, bloodshot eyes, the strong smell of alcohol on his breath, and slurred speech. Smith asked McKinnon to exit his vehicle. Upon exiting, he lost his balance, almost fell, and staggered as he walked. Smith performed standardized field sobriety tests (SFSTs) on McKinnon. The SFSTs indicated McKinnon was intoxicated, and McKinnon was arrested and placed in Smith's patrol car.

At the suppression hearing, Officer Smith testified that he did not personally witness McKinnon commit a traffic violation. The trial court denied McKinnon's motion to suppress evidence, and he pleaded *nolo contendere* to driving while intoxicated.

MOTION TO SUPPRESS

In his sole issue on appeal, McKinnon claims the trial court erred in denying his motion to suppress because the arrest was the result of evidence obtained during an improper investigative detention that was conducted without reasonable suspicion.

## A. Standard of Review

We use a bifurcated standard in reviewing a trial court's ruling on a motion to suppress evidence. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to the trial court's factual determinations; we review de novo the application of law to the facts. *Valtierra*, 310 S.W.3d at 447–48.

## B. Temporary Detention Based on Anonymous Tip

A valid temporary detention must be reasonable and justified at its inception. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). An officer is justified in initiating a traffic stop "if the officer, based upon specific and articulable facts, reasonably surmises that the detained person may be associated with a crime." *Davis v. State*, 829 S.W.2d 218, 219 (Tex. Crim. App. 1992) (citing *Terry*, 392 U.S. at 21). An officer need not personally observe the traffic violation; under certain circumstances, a stop may be justified if the facts underlying the traffic stop are observed by a citizen-informant. *Brother v. State*, 166 S.W.3d 255, 257–58 (Tex. Crim. App. 2005) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). A citizen's tip may justify the initiation of a stop if the tip contains "sufficient indicia of reliability." *Arizpe v. State*, 308 S.W.3d 89, 92 (Tex. App.—San Antonio 2010, no pet.) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (internal quotation marks omitted)).

McKinnon contends Officer Smith lacked reasonable suspicion to stop him because (1) the informant neither gave his name nor remained on the scene, and (2) Smith failed to corroborate the concerned motorist's information.

*1.  Reliability of an Anonymous Tip*

We evaluate four factors in determining the reliability of an anonymous citizen's information: "(1) whether the informant provide[d] a detailed description of the wrongdoing; (2) whether the informant observed the wrongdoing firsthand; (3) whether the informant is somehow connected with the police (e.g., a paid informant); and (4) whether the informant place[d] himself in a position to be held accountable for the report."  *Arizpe*, 308 S.W.3d at 92 (citing *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.)); *accord Brother v. State*, 166 S.W.3d 255, 258 (Tex. Crim. App. 2005).  When determining an informant's reliability, courts distinguish between anonymous 911-callers and unidentified informants who give unsolicited information to officers in a face-to-face manner.  The face-to-face informant is inherently more reliable than the anonymous 911-caller because the face-to-face informant places himself in a position to be held responsible for his intervention.  *Arizpe*, 308 S.W.3d at 93; *see also Mitchell v. State*, 187 S.W.3d 113, 117–18 (Tex. App.—Waco 2006, pet. ref'd); *Hawes v. State*, 125 S.W.3d 535, 538–39 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *State v. Fudge*, 42 S.W.3d 226, 232 (Tex. App.—Austin 2001, no pet.).

Because the concerned motorist's identity is unknown, the information he provided to the dispatcher and Officer Smith is considered an anonymous tip.  *See Mitchell*, 187 S.W.3d at 117.  Therefore, we look to the four factors used in *Arizpe* to determine the reliability of the 911-caller's information.

The concerned motorist phoned 911 and relayed contemporaneous details of the location and nature of the events that he witnessed firsthand. Specifically, the caller gave detailed facts about McKinnon's erratic driving, including weaving, driving on the shoulder, and causing other vehicles to swerve. This detailed information is sufficient for establishing the first and second factors for determining reliability. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258. Moreover, there is no evidence that the 911-caller was a paid informant; therefore, the third factor is satisfied. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258. Finally, the motorist spoke face-to-face with Officer Smith, and there is no evidence the motorist refused to reveal his identity. The unidentified motorist placed himself in a position where he could have been identified and held accountable for the information he provided, and Smith testified that he had "the opportunity" to ask the concerned motorist's name and to run his license plates. *See Arizpe*, 308 S.W.3d at 93; *Fudge*, 42 S.W.3d at 232. The fact that Officer Smith chose not to obtain identifying information such as the motorist's name, driver's license number, or license plate number does not, by itself, make the motorist's information unreliable. *See Arizpe*, 308 S.W.3d at 93; *Fudge*, 42 S.W.3d at 232. There is nothing in the record that should have caused Officer Smith to question the reliability of the face-to-face informant. *See Arizpe*, 308 S.W.3d at 93. Accordingly, the fourth factor for determining reliability has been established. *See id.* Considering all four factors for determining reliability of an anonymous informant's tip, we conclude that the concerned motorist's information was reliable. *See id.*; *see also Brother*, 166 S.W.3d at 258.

2. *Basis for Reasonable Suspicion*

McKinnon argues that Officer Smith lacked reasonable suspicion because he did not corroborate the concerned motorist's information by personally observing erratic driving.

Having determined the concerned motorist's information was reliable, we must determine "whether the totality of that reliable information provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, would lead to the reasonable conclusion that the appellant was committing ... some type of criminal activity." *See Derichsweiler v. State*, 348 S.W.3d 906, 915–16 (Tex. Crim. App. 2011); *see also Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). Before detaining a suspect, an officer must corroborate the facts supplied by a citizen-eyewitness. *Brother*, 166 S.W.3d at 258–59 & n.5. However, corroboration does not require the officer to personally observe criminal conduct; "[r]ather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* at 259 n.5.

Smith testified that his experience and training combined with the facts relayed from the concerned motorist gave him reasonable suspicion that McKinnon was driving while intoxicated. He stated a motorist's erratic driving, swerving, driving on the shoulder of the road, and almost causing vehicular accidents are consistent with intoxicated driving. *See id.* at 256, 258 (determining a concerned motorist's account of a suspect's erratic driving and weaving in and out of traffic was sufficient evidence of intoxication to support a traffic stop). The totality of the information supplied by the concerned motorist provided specific and articulable facts that reasonably led Officer Smith to believe McKinnon was driving while intoxicated. *See Derichsweiler*, 348 S.W.3d at 915–16; *Brother*, 166 S.W.3d at 258–59 & n.5. Thus, when Officer Smith confronted the concerned motorist, saw the vehicle described by the motorist, and the motorist pointed to McKinnon, Smith had sufficient evidence to reasonably conclude that the information given to him was reliable. *See Brother*, 166 S.W.3d at 258–59. Because the

information given by the informant was reliable, Officer Smith was not required to follow McKinnon until he personally observed a traffic violation. *See id.* at 259 ("To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny."); *cf. State v. Fudge*, 42 S.W.3d 226, 232 (Tex. App.— Austin 2001, no pet.). Accordingly, Officer Smith had reasonable suspicion to stop McKinnon.

## CONCLUSION

The trial court did not err in denying McKinnon's motion to suppress evidence. Therefore, we affirm the trial court's judgment.

Rebecca Simmons, Justice

DO NOT PUBLISH